UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
JOHN BURKE,

Plaintiff,

- against -

KILOLO KIJAKAZI, *Acting Commissioner of Social Security*,

Defendant.
-----------------------------------------------------------x

**MEMORANDUM & ORDER**
23-CV-6718 (PKC)

PAMELA K. CHEN, United States District Judge:

Plaintiff Burke filed this action pursuant to 42 U.S.C. § 405(g) to challenge an adverse determination by the Social Security Administration ("SSA"), which had denied Plaintiff benefits. After the parties stipulated to remand the case to the SSA, Plaintiff was awarded roughly $169,079 in past-due benefits and future monthly checks in the amount of $2,729. Plaintiff's counsel, Seelig Law Offices, LLC (the "Firm"), now moves for $7,000 in attorney's fees pursuant to 42 U.S.C. § 406(b) ("Section 406(b)"). For the reasons explained below, the Firm's motion is granted and it is awarded $7,000.

**BACKGROUND**

Plaintiff, through the Firm, filed this action on September 8, 2023, after he was denied benefits at the agency level. (Compl., Dkt. 1.) On December 13, 2023, the SSA Commissioner filed the Administrative Transcript of Plaintiff's SSA proceedings. (*See* Admin. Tr., Dkt. 6.) Nine days later, on December 22, 2023, the parties jointly moved to remand to the SSA. (Joint Remand Mot., Dkt. 7.) On December 26, 2023, the Court granted the motion, reversing and remanding the case to the SSA, and entering judgment in favor of Plaintiff. (12/26/2023 Dkt Order; J., Dkt. 8.) The Court then awarded Plaintiff $1,707.57 in attorney's fees pursuant to the Equal Access to

Justice Act ("EAJA"), 28 U.S.C. § 2412. (*See* Joint EAJA Att'y Fees Mot., Dkt. 9; 02/29/2024 Dkt. Order.)

On October 21, 2025, the SSA mailed Plaintiff a Notice of Award letter informing him that he would receive approximately $169,079 in past-due benefits and $2,729 in future monthly checks, with 25% of the past-due benefits ($42,269.75) withheld as possible fees for his attorney. (Seelig Decl. Ex. B ("Notice of Award"), Dkt. 12-2, at ECF[1] 4, 6.)

On November 4, 2025, the Firm filed the instant motion seeking $7,000 in attorney's fees under Section 406(b). (Pl.'s 406(b) Att'y Fees Mot. ("Pl.'s Mot."), Dkt. 10.) Along with the motion, the Firm submitted a fee agreement demonstrating that Plaintiff had retained the Firm on a 25% contingency-fee basis, (*see* Seelig Decl. Ex. A ("Retainer"), Dkt. 12-1, at ECF 2), as well as itemized time records, showing that the Firm spent a total of seven hours litigating this matter before the Court, (*see* Seelig Decl. Ex. C ("Hours"), Dkt. 12-3, at ECF 2). $7,000 for seven hours of work would be an effective hourly rate of $1,000 per hour.

**DISCUSSION**

**I. Timeliness**

Motions for attorney's fees under Section 406(b) must be filed within the 14-day filing period prescribed by Federal Rule of Civil Procedure ("Rule") 54(d). *Sinkler v. Berryhill*, 932 F.3d 83, 86–89 (2d Cir. 2019). The 14-day period begins to run from when "counsel receives notice of the benefits award," *id.* at 88, and the law presumes that "a party receives communications three days after mailing," *id.* at 89 n.5 (citing *Tiberio v. Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 37 (2d Cir. 2011)). Furthermore, because Rule 54(d)

[1] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

allows judges to extend the 14-day deadline by court order, "district courts are empowered to enlarge that filing period where circumstances warrant." *Id.* at 89 (citations omitted).

Plaintiff's counsel received the Notice of Award letter on October 23, 2025. (*See* Pl.'s Mem. Supp. Pl.'s Mot. ("Pl.'s Mem."), Dkt. 11, at 2.) This motion was filed on November 4, 2025, less than 14 days later. (Pl.'s Mot., Dkt. 10.) The motion is thus timely filed.

## II. Reasonableness of the Requested Fee

### A. Legal Standard

Section 406(b) of the Social Security Act provides that a court may award a "reasonable fee . . . not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled." 42 U.S.C. § 406(b)(1)(A). If the contingency percentage is within the 25% cap, and there is no evidence of fraud or overreaching in making the agreement, a district court should test the agreement for reasonableness. *Fields v. Kijakazi*, 24 F.4th 845, 853 (2d Cir. 2022).

To determine whether a fee is reasonable, a district court should consider (1) "the character of the representation and the results the representative achieved"; (2) "whether a claimant's counsel is responsible for undue delay," unjustly allowing counsel to obtain a percentage of additional past-due benefits[3]; and (3) whether the requested amount is "so large in comparison to the time that counsel spent on the case as to be a windfall to the attorney." *Id.* at 849 (citations omitted); *see also id.* at 849 n.2, 853. Ultimately, a district court may reduce the amount called

[3] This is because the amount of benefits a successful plaintiff receives is calculated from the date of onset up to the date the SSA awards benefits on remand. *See Fields*, 24 F.4th at 849 n.2 ("Undue delay can be a particular problem in cases like these, in which past-due benefits are at stake. Because delay increases the size of a plaintiff's recovery, it may also increase disproportionately a lawyer's contingent fee recovery." (citing *Gisbrecht v. Barnhart*, 535 U.S. 789, 791 (2002))); *Gisbrecht*, 535 U.S. at 791 (noting that "where the attorney is responsible for delay, the attorney should not be allowed to profit from the accumulation of benefits during the pendency of the case in court").

for in the contingency fee agreement "only when [the court] finds the amount to be unreasonable," after considering the factors outlined above. *Id.* at 852–53.

The windfall factor is not equivalent to the traditional lodestar inquiry, where the Court is called on to act as an arbiter of "reasonableness" between the "opposing interests of the prevailing plaintiffs and losing defendants." *Id*. at 854 (quoting *Wells v. Sullivan*, 907 F.2d 371 (2d Cir. 1990)). Rather, "courts must consider more than the de facto hourly rate," because "even a relatively high hourly rate may be perfectly reasonable, and not a windfall, in the context of any given case." *Id.* The Second Circuit instructed courts to consider (1) "the ability and expertise of the lawyers and whether they were particularly efficient, accomplishing in a relatively short amount of time what less specialized or less well-trained lawyers might take far longer to do"; (2) "the nature and length of the professional relationship with the claimant—including any representation at the agency level"; (3) "the satisfaction of the disabled claimant"; and (4) "how uncertain it was that the case would result in an award of benefits and the effort it took to achieve that result." *Id.* at 854–55.

In addition, if fee awards are made to a claimant's attorney under both the EAJA and Section 406(b), the attorney must refund the claimant the amount of the smaller fee. *See Gisbrech v. Barnhart*, 535 U.S. 789, 796 (2002); *Wells v. Bowen*, 855 F.2d 37, 48 (2d Cir. 1988) ("Once appropriate fees under 42 U.S.C. § 406(b) are calculated, the district court should order [the attorney] to return the lesser of either that amount or the EAJA award to his clients.").

**B. Application**

Here, Plaintiff retained the Firm pursuant to a 25% contingency-fee agreement. (*See* Retainer, Dkt. 12-1, at ECF 2.) There are no allegations of fraud or overreaching with respect to the retainer agreement. The Firm seeks $7,000 in attorney's fees, significantly less than the full 25% of Plaintiff's past-due benefits ($42,269.75). $7,000 for seven hours of work would be an

effective hourly rate of $1,000 per hour. For the reasons explained below, the Court finds that amount to be reasonable in the context of this case.

To determine reasonableness, the Court first considers "the character of the representation and the results the representative achieved." *Fields*, 24 F.4th at 849. Here, the Firm represented Plaintiff before the Court in appealing the denial of his SSA disability benefits. The Firm's activities in relation to the appeal included conferring with Plaintiff, reviewing the docket, drafting filings, and corresponding with defense counsel regarding the stipulation to remand. (*See* Pl.'s Mem., Dkt. 11, at 9; Hours, Dkt. 12-3, at ECF 2.) The Firm spent the bulk of its time—approximately 3.9 hours—on drafting and filing the Complaint and its exhibits. (*See* Hours, Dkt. 12-3, at ECF 2.)

The Court notes that the Firm spent only 1.1 hours in total on the remand stipulation—0.1 hours reviewing email correspondence from opposing counsel about the stipulation, and one hour reviewing the proposed stipulation and corresponding with opposing counsel and Plaintiff regarding the same, (*see id.*)—which suggests that the Firm likely received the proposal to remand from opposing counsel. This potentially raises concern that counsel "did not expend substantial efforts to secure the stipulation." *See Saha v. Comm'r of Soc. Sec.*, No. 23-CV-2797 (PKC), 2026 WL 2389596, at *3 (E.D.N.Y. Aug. 17, 2026) (inferring the same where counsel spent 0.3 hours total on a successful remand stipulation). In *Saha*, the Court concluded that a downward adjustment was warranted because the plaintiff's success on appeal "appear[ed] largely unrelated" to counsel's "limited efforts." *See id.* Here, however, the Firm contributed more time to securing the stipulation and at a lower hourly rate than the attorneys in *Saha*. *Compare id.* at *2–3, *with* (Pl.'s Mem., Dkt. 11, at 10). As noted, the Firm devoted 3.9 hours to drafting the Complaint and its exhibits, as well as an additional 0.6 hours to reviewing the docket and docket entries before

ever corresponding with opposing counsel about the proposed stipulation of remand. (*See* Hours, Dkt. 12-3, at ECF 2.) And, ultimately, the Firm's advocacy successfully persuaded the Commissioner that remand was necessary for further evaluation of the medical evidence, (*see* Stip. and Proposed Order, Dkt. 7-1), which resulted in Plaintiff receiving $169,079 in past-due benefits and future monthly payments. (*See* Pl.'s Mem., Dkt. 11, at 8–9.) Accordingly, since the Firm expended relatively few hours, seeks a relatively low hourly rate, and helped Plaintiff recover significant past and future benefits, the Court finds that this factor does not warrant a downward adjustment.

Second, the Court must determine whether counsel was responsible for unreasonable delays. *Fields*, 24 F.4th at 849. Here, there is no evidence that the Firm caused any undue delays. The SSA Appeals Council issued a final decision denying Plaintiff's appeal on July 6, 2023, (*see* Compl. Ex. B ("Notice of Appeal Council Action"), Dkt. 1-2; Compl., Dkt. 1, ¶ 1); Plaintiff engaged the Firm on August 14, 2023, (*see* Retainer, Dkt. 12-1, at ECF 2); and the Firm filed the Complaint on September 8, 2023, less than one month later, (*see* Compl., Dkt. 1). The only delay in this action is attributable to the Commissioner, who requested a one-month extension to file the Administrative Transcript, which the Court granted. (*See* 11/13/2023 Dkt. Order; *see also* Def.'s Mot. for Extension of Time, Dkt. 5; Admin. Tr., Dkt. 6.) Therefore, this factor also does not justify a downward adjustment. *See, e.g.*, *Adamu v. Comm'r of Soc. Sec*, No. 21-CV-1936 (PKC), 2026 WL 2475312, at *4 (E.D.N.Y. Aug. 24, 2026) (finding that attorney's single request for a 14-day extension did not warrant a downward adjustment).

The third consideration with respect to reasonableness is whether the requested amount constitutes a "windfall." *Fields*, 24 F.4th at 849. As described above, the Court analyzes four factors in determining whether a requested amount qualifies as a windfall. *See id.* at 854–56.

First, with respect to "the ability and expertise of the lawyers and whether they were particularly efficient," *id.* at 854, the Court finds that the Firm is highly experienced in handling SSA matters, and pursued this case efficiently. As to its experience and ability, the Court notes that Beret L. Flom, an associate at the Firm, performed most of the work on this appeal. (*See* Seelig Decl., Dkt. 12, ¶¶ 7–8.) Ms. Flom has over 15 years of legal experience and has obtained remands for the "vast majority" of her SSA clients at the Firm. (*See id.* ¶¶ 9–11.) Robert B. Seelig, a partner at the Firm, who supervised and assisted in the case, has practiced Social Security disability law for over 15 years and teaches continuing legal education courses on the subject. (*Id.* ¶¶ 8, 12.)

As to efficiency, the Court finds that seven hours was a reasonable amount of time to spend on this case. In *Fields*, the Second Circuit found that 25.8 hours reviewing an 863-page transcript, drafting a 19-page brief, and then obtaining a stipulation of dismissal demonstrated particular efficiency, and that "other lawyers might reasonably have taken twice as much time" to do the same work, justifying a de facto hourly rate of $1,556.98. *See* 24 F.4th at 854. Here, while the amount of work required was significantly less than in *Fields* because the Firm had a shorter transcript to review, 648 pages, (Admin Tr., Dkt. 6),[2] and because Plaintiff's counsel obtained a stipulation of remand before having to draft a brief, (*see* 12/26/2023 Order), that difference is reasonably reflected by the significantly fewer hours the Firm expended. Therefore, this factor does not suggest that the requested fee would represent a windfall.[3]

---

[2] An additional 703 pages of Plaintiff's medical records are appended to the transcript. (*See* Attachments, Dkts. 6-1, 6-2, 6-3.)

[3] The Court's determination might be different if, for example, the Firm sought the full 25% of Plaintiff's past-due benefits, which would result in an effective hourly rate of over $6,000. But the Court appreciates that the Firm, reasonably, does not seek the full 25% of Plaintiff's past-due benefits.

Second, with respect to "the nature and length of the professional relationship with the claimant—including any representation at the agency level," *Fields*, 24 F.4th at 855, the Court notes that the Firm represented Plaintiff in front of the SSA before filing this suit. In *Fields*, plaintiff's counsel had represented the plaintiff from the start of his agency proceedings, including four separate hearings before Administrative Law Judges and multiple petitions to the SSA Appeals Council, further enabling plaintiff's counsel to efficiently brief its arguments before the district court, and distinguishing the case from some other cases that had found a windfall. *See id.* at 855. Here, the Firm represented Plaintiff throughout his agency proceedings, (*see* Pl.'s Mem., Dkt. 11, at 1–2), including at a hearing before the Administrative Law Judge, (Admin Tr., Dkt. 6, at ECF 35–68), and in a petition to the SSA Appeals Council, (*id.* at ECF 200–211). Thus, the Firm developed a comparable attorney-client relationship with Plaintiff as in *Fields* that was built over multiple rounds of representation and enabled the Firm to efficiently handle Plaintiff's appeal. Additionally, the Firm achieved comparable results to those secured by plaintiff's counsel in *Fields*. This factor, therefore, does not warrant a downward adjustment.

With respect to "the satisfaction of the disabled claimant," *Fields*, 24 F.4th at 855, the Court presumes that Plaintiff is satisfied with the results, with no evidence to the contrary. *See Gray v. Comm'r of Soc. Sec.*, No. 20-CV-3916 (PKC), 2023 WL 3948796, at *4 (E.D.N.Y. June 12, 2023). Plaintiff received the past-due benefits he sought, and counsel was not responsible for any delays that may have warranted dissatisfaction. Therefore, this factor does not suggest that the requested fee constitutes a windfall. *See, e.g.*, *Hickey v. Comm'r of Soc. Sec.*, No. 18-CV-7053 (PKC), 2022 WL 2918234, at *3 (E.D.N.Y. July 25, 2022) (finding no downward adjustment warranted where there was no evidence of dissatisfaction and counsel achieved a favorable result without any requests for extension); *Kilgour*, 2022 WL 2918235, at *3 (same).

Lastly, the Court considers "how uncertain it was that the case would result in an award of benefits and the effort it took to achieve that result," *Fields*, 24 F.4th at 855, and finds that this factor does not warrant a downward adjustment. On the one hand, the Court acknowledges that the brevity with which the appeal in this matter was resolved could indicate a windfall because the "potential for a windfall is substantially higher" "[w]hen . . . the federal action resolves successfully with minimal efforts." *See Schreck v. Comm'r of Soc. Sec.*, No. 23-CV-7695 (NJC) (AYS), 2025 WL 2306642, at *3 (E.D.N.Y. Apr. 7, 2025) (citing *Fields*, 24 F.4th at 856), *report and recommendation adopted sub nom. Schreck v. Kijakazi*, 2025 WL 2147459 (E.D.N.Y. July 29, 2025). For example, in *Schreck*, the district court found that 3.4 hours of representation resulting in an hourly rate of $3,618.76 constituted an "unreasonable windfall to counsel," where the parties stipulated to remand one week after the defendant filed the administrative transcript and no briefs were filed. *Id.* at *1–3; *see also Rojas v. Comm'r of Soc. Sec.*, No. 20-CV-2225 (PGG) (HJR), 2025 WL 3481855, at *1, *4–5 (S.D.N.Y. Nov. 26, 2025) (concluding that a $4,809.75 de facto hourly rate constituted unreasonable windfall where counsel spent four hours securing a favorable result in district court and no briefs or motions were filed); *Shreck*, 2025 WL 2306642, at *3–5 (reducing requested attorneys' fees where counsel's representation "required far less time than the amount typically deemed reasonable for a Social Security appeal in federal court," and observing that "an average of at least 30 hours [is typically] expended in Social Security appeals in district courts" (citing *Figueroa v. Comm'r of Soc. Sec.*, No. 22-CV-3759 (SLC), 2024 WL 5039633, at *3 (S.D.N.Y. Dec. 9, 2024))).

On the other hand, here, as in *Fields*, "[t]he success of the claim was far from a sure thing, as evidenced by the fact that it was denied multiple times at the agency level," which weighs against reducing the Firm's requested fee. *See Fields*, 24 F.4th at 856; (*see also* Pl.'s Mem.,

Dkt. 11, at 8 (noting that Plaintiff's case was "denied at three levels of agency review prior to the initiation of the civil action")). The Firm is also seeking less than a third of the hourly rate requested in *Schreck* for more than twice the number of hours. *Compare Shreck*, 2025 WL 2306642, at *2–3, *5, *with* (Pl.'s Mem., Dkt. 11, at 10). Additionally, the Firm's de facto hourly rate requested is even lower than hourly rates deemed reasonable in other comparable cases. *See, e.g.*, *Rojas*, 2025 WL 3481855, at *6 (recommending downward adjustment resulting in de facto hourly rate of $2,000); *Figueroa*, 2024 WL 5039633, at *4–5 (collecting cases approving hourly rates in excess of $1,500 but ordering downward adjustment resulting in de facto hourly rate of $1,500 because of the "low total number of hours" counsel spent on federal appeal). Therefore, on balance, the Court finds that this factor does not suggest an unreasonable windfall.

For the reasons explained above, the Court finds the requested amount of $7,000 to be reasonable. The Firm's motion for Section 405(b) attorney's fees is therefore granted. Upon receiving the Section 406(b) award, the Firm must remit the $1,707.57 already received pursuant to the EAJA to Plaintiff.

**CONCLUSION**

For the reasons explained above, the pending motion for attorney's fees under 42 U.S.C. § 406(b) is granted, and Seelig Law Offices, LLC is awarded $7,000. Upon receipt of this award from the Government, the Firm shall promptly refund Plaintiff $1,707.57, which represents the EAJA fees already received by counsel. The case remains closed.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 30, 2026
Brooklyn, New York